FILED IN
COURT OF CRIMINAL APPEALS

DECEMBER 21, 2015

ABEL ACOSTA, CLERK

PD-1568-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 12/21/2015 1:26:42 PM
Accepted 12/21/2015 1:49:25 PM
ABEL ACOSTA
CLERK

**PD-1568-15**

IN THE TEXAS COURT OF CRIMINAL APPEALS

---

# ADOLPH JUNIOR MENJIVAR
*APPELLANT*

vs.

# THE STATE OF TEXAS
*APPELLEE*

---

FROM THE FIFTH COURT OF APPEALS
CAUSE No. 05-14-01028-CR

APPEAL FROM THE 291ST JUDICIAL DISTRICT COURT OF
DALLAS COUNTY, TEXAS, CAUSE No. F-13-57185-U

---

# APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

---

BRUCE ANTON
State Bar No. 01274700
ba@sualaw.com

BRETT ORDIWAY
State Bar No. 24079086
bordiway@sualaw.com

SORRELS, UDASHEN & ANTON
2311 Cedar Springs, Suite 250
Dallas, Texas 75201
214-468-8100 (office)
214-468-8104 (fax)

*Counsel for Appellant*

## Ground for Review

Whether the trial court erred in instructing the jury on the doctrine of provocation.

# **Table of Contents**

Ground for Review ..................................................................................2

Table of Contents ..................................................................................3

Index of Authorities ..............................................................................4

Identity of Parties and Counsel ...........................................................5

Statement Regarding Oral Argument .................................................6

Statement of the Case and Procedural History........................................7

Argument...............................................................................................10

    The trial court erred in instructing the jury on the doctrine of
    provocation......................................................................................10

Prayer ...................................................................................................12

Certificate of Service............................................................................14

Certificate of Compliance ...................................................................14

APPENDIX..............................................................................................15

# Index of Authorities

**Cases**

*Juarez v. State*, 961 S.W.2d 378, 380 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd) ..................................................................................11

*Menjivar v. State*, No. 05-14-01028-CR, 2015 WL 6750819 (Tex. App.—Dallas 2015) ..................................................................................9, 11

*Smith v. State*, 965 S.W.2d 509, 514 (Tex. Crim. App. 1998)..........10, 12

**Statutes**

TEX. PEN. CODE § 19.02 ..................................................................8, 10

TEX. PEN. CODE § 22.02 ........................................................................8

**Rules**

TEX. R. APP. P. 21.8(c) ..........................................................................9

## Identity of Parties and Counsel

For Appellant Adolph Junior Menjivar:

TED SHOEMAKER
*Trial counsel of record*
705 Ross Avenue
Dallas, Texas 75202

J. JOSEPH MONGARAS
*Trial counsel of record*
SORRELS, UDASHEN & ANTON
2311 Cedar Springs, Suite 250
Dallas, Texas 75201

BRUCE ANTON
BRETT ORDIWAY
*Appellate counsel of record*
SORRELS, UDASHEN & ANTON

For Appellee the State of Texas:

ROBIN PITMAN
JEFF MATOVICH
*Trial counsel of record*
DALLAS COUNTY DISTRICT ATTORNEY'S OFFICE
133 North Riverfront Boulevard
Dallas, Texas 75207

MARISA ELMORE
*Appellate counsel of record*
DALLAS COUNTY DISTRICT ATTORNEY'S OFFICE

Trial court:

THE HONORABLE JENNIFER BALIDO
291ST JUDICIAL DISTRICT COURT

## Statement Regarding Oral Argument

Menjivar does not request oral argument.

## Statement of the Case and Procedural History

Menjivar and the complainant each spent the evening of June 22, 2013, at a nightclub in the Oak Cliff neighborhood of Dallas. (RR2: 183, 185; RR3: 124-25, 149, 151; RR4: 27, 38). As they left the nightclub the following morning, however, a confrontation arose between the two as their vehicles met head-to-head in a parking aisle. (RR3: 124-127, 150-153; RR4:27-29).

For no reason other than that Menjivar "look[ed] at [the complainant and his friends] the wrong way," the complainant and his friends got out of their vehicle and surrounded Menjivar. (RR3: 130, 156-157; RR4: 31; RR7: 19-21). One or more of them began hitting Menjivar, who attempted to drive away. (RR3: 130, 156; RR4: 32-33; RR7: 35-36, 118). As he did so, though, and the complainant and friends returned to their car, Menjivar then immediately stopped, got out of his car, "and next thing you know" stabbed the complainant in the neck and chest. (RR3: 132-133, 157, 158; RR4: 32; RR7: 106-07, 150). A struggle ensued with the complainant's friends, during which Menjivar was knocked to the ground and beat. (RR3: 159; RR4: 32-33, 43-44; RR7: 107). The police then arrived. (RR4: 69-70).

Menjivar was taken to the hospital for treatment. The next day, he gave a statement to the police and explained that he acted in self-defense. (RR4.132, 157, 160; RR5: 7-10, 21). Menjivar contended that, as he tried to leave, one of the men threatened to shoot him. (RR7: 212-13, 218-19, 265). Because Menjivar was trapped in a crowded parking lot, he felt compelled to get out of his vehicle, and when he then saw the complainant reach for something under his car seat, and heard someone say "pull it," Menjivar determined that he had to stab the complainant in order to save himself. (RR7: 198-99, 221-27, 259, 265).

A Dallas County grand jury indicted Menjivar on July 12, 2013, for the offense of murder, enhanced by a previous conviction for aggravated assault with a deadly weapon. (CR: 10); *see* TEX. PEN. CODE §§ 19.02 & 22.02. He pleaded not guilty, urging that he acted in self-defense, and on July 15, 2014, his trial began with voir dire. (RR2: 6, 9; RR9: 29). After six days of testimony from numerous State and defense witnesses, the jury found Menjivar guilty, and then, after two days of punishment testimony, sentenced him to 65 years' imprisonment. (RR3-7; RR8: 56; RR8-9; RR9: 57; CR: 226). Menjivar then timely filed a mo-

tion for new trial and notice of appeal, the former of which was over-ruled by operation of law. (CR: 224-25); *see* TEX. R. APP. P. 21.8(c).

On appeal to the Fifth Court of Appeals in Dallas, Menjivar complained that the trial court erroneously included in the jury charge an instruction on the doctrine of provocation. *Menjivar v. State*, No. 05-14-01028-CR, 2015 WL 6750819 (Tex. App.—Dallas 2015). In a cross-point, the State asked the court to modify the judgment to reflect that Menjivar pleaded not true to the enhancement allegations and that the jury found the enhancement allegations true. *Id.* The court concluded that the evidence supported submitting a provocation instruction, modified the judgment as the State requested, and as modified, affirmed the trial court's judgment. *Id.* Menjivar did not file a motion for rehearing.

## Argument

> **The trial court erred in instructing the jury on the doctrine of provocation.**

◆　◆　◆

Over Menjivar's protestations that he acted in self-defense, a Dallas County jury convicted him of murder. (RR7: 198-99, 212-13, 218-19, 221-27, 259, 265). CR: 226); *see* TEX. PEN. CODE § 19.02. In Menjivar's opening brief on appeal, he complained that the trial court erroneously included in the jury charge an instruction on the doctrine of provocation. (Ap. Br. at 10); *see Smith v. State*, 965 S.W.2d 509, 514 (Tex. Crim. App. 1998) (Under doctrine of "provoking the difficulty" or "provocation," defendant forfeits right of self-defense if he or she provoked another to make attack on defendant, so that defendant would have pretext for killing or inflicting any other degree of harm upon victim under guise of self-defense.). To justify such an instruction, the law clearly requires that the defendant do or say something to cause the attack on him. *Id.* And here, if Menjivar provoked the confrontation at all, it was only by "looking at [the complainant and his friends] the wrong way." (RR7: 19-21).

10

The court of appeals held otherwise after detailing all that occurred "after the prior altercation" between Menjivar and the complainant and his friends—the "looking the wrong way"-prompted altercation—"was over." *Menjivar*, 2015 WL 6750819. But there were not two isolated altercations that night. Indeed, as the State acknowledged before the court of appeals, the men also testified that Menjivar appeared at their car window "the next thing you know" after what the court of appeals nonetheless characterized as a distinct encounter. (St. Br. at 5) (citing RR3: 132-33). And, as the State further acknowledged, the surveillance video from the scene reveals that a mere seven seconds passed between the "initial altercation" and stabbing. This corroborated Menjivar's trial testimony that, "*right when* [he] was driving off," he heard the complainant and his friends threaten to shoot him. (RR7: 218). Menjivar certainly did not "admit[ ] he returned to an altercation that all parties had abandoned," as the State alleged—without citation—in its brief before the court of appeals. (St. Br. at 29). This was a singular incident. *See Juarez v. State*, 961 S.W.2d 378, 380 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd) (trial judge correctly refused murder defendant's requested instruction on abandonment of the difficulty as an ex-

ception to provoking the difficulty limitation on self-defense, where defendant fled in vehicle immediately after shooting up victim's house, victim immediately gave chase in vehicle, confrontation never ceased before defendant shot at victim's vehicle, and defendant never communicated to victim his intent to abandon the difficulty).

Because there was only altercation, all that need be looked at in evaluating whether the court should have given a jury instruction on provocation is what Menjivar did *before* the complainant and his friends initially attacked him. And, as to that question, again, if Menjivar provoked the singular confrontation at all, it was only by "looking at [the complainant and his friends] the wrong way." (RR7: 19-21). That's precisely why the State at closing entirely failed to identify any provoking acts or words. (RR7: 21-28, 44-55). The jury instruction on provocation was thus an abuse of discretion. *See Smith*, 965 S.W.2d at 514 (an instruction on provocation should only be given where, among other things, "the defendant [did] or [said] something to cause the attack on him"). The court of appeals was wrong to conclude otherwise.

## Prayer

12

Accordingly, Menjivar respectfully requests this Court grant this petition for discretionary review so that it may reverse the judgment of the court of appeals and remand the case to that court to evaluate the harm from the trial court's error.

Respectfully submitted,


_/s/ Bruce Anton_
BRUCE ANTON
Bar Card No. 01274700
ba@sualaw.com


_/s/ Brett Ordiway_
BRETT ORDIWAY
State Bar No. 24079086
bordiway@sualaw.com

SORRELS, UDASHEN & ANTON
2311 Cedar Springs Road, Suite 250
Dallas, Texas 75201
(214)-468-8100 (office)
(214)-468-8104 (fax)

*Counsel for Appellant*

13

**Certificate of Service**

I, the undersigned, hereby certify that a true and correct copy of the foregoing Appellant's Petition for Discretionary Review was electronically served to the Dallas County District Attorney's Office and State Prosecuting Attorney on December 21, 2015.

/s/ Bruce Anton
Bruce Anton

**Certificate of Compliance**

Pursuant to TEX. R. APP. P. 9.4(i)(3), undersigned counsel certifies that this brief complies with:

1. the type-volume limitation of TEX. R. APP. P. 9.4(i)(2)(D) because this brief contains 1,162 words, excluding the parts of the brief exempted by TEX. R. APP. P. 9.4(i)(1).

2. the typeface requirements of TEX. R. APP. P. 9.4(e) and the type style requirements of TEX. R. APP. P. 9.4(e) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2011 in 14-point Century.

/s/ Bruce Anton
BRUCE ANTON

# APPENDIX

**Affirmed and Opinion Filed November 4, 2015**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-14-01028-CR

**ADOLPH JUNIOR MENJIVAR, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 291st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1357185-U**

## MEMORANDUM OPINION

Before Justices Lang, Evans, and Whitehill
Opinion by Justice Whitehill

Menjivar attacked, stabbed, and killed Fernando Lopez during a fight in a parking lot. Despite his claim of self-defense, a jury convicted Menjivar of murder and sentenced him to sixty-five years' imprisonment.

In a single appellate issue, Menjivar asserts that the trial court erred in submitting a provocation instruction to the jury, which error caused him to suffer "some harm." In a cross-point, the State asks us to modify the judgment to reflect that Menjivar pled not true to the enhancement allegations and that the jury found the enhancement allegations true. Because we conclude that the evidence supports submitting a provocation instruction, we modify the judgment as the State requests, and as modified, affirm the trial court's judgment.

# I. Background

Between ten p.m. and midnight on the night before the murder, Gustavo and Michael Rodriguez, Martin Rodriguez and Fernando Lopez went to a bar they frequented in Oak Cliff.[1] The men rode in Martin's gray Dodge Charger, and parked the car in a Fiesta Supermarket parking lot across the street from the bar.

After drinking and hanging out at the bar, at around closing time, the four men got in the Charger to go home. Fernando was sitting in the front passenger seat, Michael was sitting in the back seat behind Martin, who was driving, and Gustavo was sitting in the back seat behind Fernando.

Martin cut through the parking lot and some parked cars to avoid a car that was stopped in a lane he wanted to use. As Martin was attempting to turn right to exit the parking lot, a blue Nissan driven by Menjivar cut him off. The Charger and the Nissan almost collided. Then, Menjivar pulled around to the driver's side window of the Charger and stopped. He and the four men in the Charger began yelling and cussing at each other. Martin heard Menjivar say something like, "Tango blast this." At some point, Menjivar was "mean mugging" them. Martin explained that this means looking at someone the wrong way.

The men in the Charger got out of the car. There were no specific threats exchanged. Michael thought Menjivar tried to get out of his car, but Gustavo shut Menjivar's car door and told him to leave. Then, Menjivar "took off real fast."

Believing the altercation had ended, the men got back into the Charger to leave. None of the men in the Charger had weapons, and there were no weapons in the car.

As the men in the Charger waited for traffic to clear, Martin glanced to his right and saw "somebody swinging in the car," through the passenger window. Michael did not immediately

---

[1] Because several of the witnesses have the same last name, we refer to all witnesses by their given names.

realize that Menjivar was the person who was trying to hit Fernando, but took a swing at him. The men tried to get out of the car, but Menjivar was "going back and forth" between the windows and "[t]here was no way they could get out."

Gustavo saw someone knock Menjivar away from the car window, so he, Martin, and Michael got out of the car and started hitting Menjivar. All of this activity was captured on the Fiesta store surveillance video, which was played for the jury.

Martin saw Fernando on the ground and initially thought he had been hit. But then somebody started screaming that Fernando had been stabbed. Gustavo ran to Fernando, who was bleeding, and held him until help arrived. The men later learned that Fernando had died.

Balthasar Reyes, a friend of Fernando, Gustavo, Martin, and Michael, was also at the bar that night, and was in the parking lot when Menjivar attacked Fernando. Reyes saw Menjivar run to the Charger's passenger side where Fernando was sitting and start swinging "in the window." Reyes thought Menjivar was "trying to take advantage of them while they're in the car;" Menjivar did not look afraid as he ran toward the Charger. As Menjivar approached the car, Fernando was looking "forward down, like he was looking at his phone." Reyes ran over to help his friends, and hit Menjivar and knocked him out. Reyes did not see Fernando fight back; he looked like he was caught by surprise. Reyes also kicked Menjivar, and then "everybody started getting on [Menjivar]."

When the police responded to the incident, the only weapon found was the black-handled four-inch tactical Smith & Wesson knife they took away from Menjivar.

Detective Eduardo Ibarra interviewed Menjivar at the hospital the next day. Menjivar was alert and coherent when he gave his statement and "seemed eager to talk about what happened." Ibarra's interview of Menjivar was recorded, and the recording was played for the jury.

–3–

During his interview, Menjivar gave two different versions of events. In his first version, Menjivar said he was driving through the Fiesta parking lot and another car almost ran into his car. Menjivar exclaimed, "Dude, you almost hit my car, and he exchanged some words with the driver and passengers through the open car windows. One passenger said, "Hey, f– you, bitch, what's up?"

According to Menjivar, the man in the front passenger's seat jumped out of the car, came up to his open back driver's-side window, and grabbed and pulled the back of his shirt. In response, Menjivar jumped out of the car, and the man swung something at him that he guessed was a knife. He blocked the swing and the knife cut his arm. He then grabbed the knife from the man and someone hit him in the back with a bottle. After that, he "just started swinging . . . and self-defensing [himself]." Menjivar told the detective he stood between the cars, but he never got close to the other car or approached it. Later during the 30-minute interview, Menjivar admitted this first version of the crime was a "bullshit story."

After the detective told Menjivar that his story was inconsistent with the surveillance video, Menjivar changed his story. He said that after the near-collision, the men in the other car started "talking shit." He admitted it was possible that he approached the Charger first and walked up to the passenger side of the car, but claimed he was drunk and did not remember because he blacked out. Menjivar also admitted he had a black knife.

Menjivar said that he went up to the window by the driver's window. The driver "started going like he was going to grab his gun or something" and the "old boy" in the back seat tried to get out of the car. Appellant pulled his knife out when he saw the man "reach." Menjivar said, "I stabbed him, I guess." Menjivar believed he had stabbed the driver and reacted with surprise when the detective told him he had stabbed the passenger. After he stabbed into the car, all of the men got out.

–4–

When Detective Ibarra asked Menjivar why he got out of his car when he knew the other car had "four or five dudes" in it, all of whom were far younger than him, Menjivar said "he" kept going on with this "bitch shit." Menjivar volunteered that he "didn't say nothing about no hood." But the detective told him he knew that was not true because several witnesses heard him yell "Tango, Tango, Tango" during the attack.[2]

The jury also heard a recording of a telephone call between Menjivar and his girlfriend while Menjivar was in jail. When his girlfriend asked if he "said" self-defense, Menjivar replied, "Yeah. That's what I'm saying. Self-defense, see how it comes out."

Menjivar testified at trial. He said that on the evening in question he left a birthday party at 11:45 p.m. and went home. He had consumed alcohol at the party and had just started drinking a 12-pack of beer when an intoxicated friend called him from the bar and asked for a ride. Despite the fact that he was "buzzing good" and "heavy duty" intoxicated, he believed he was able to clearly remember the events that occurred that night.

He drove his girlfriend's Nissan to the Fiesta parking lot to pick up his friend. Menjivar claimed that his near-collision with the Charger was not the parties' first encounter that night. Instead, the altercation began when Martin tapped the rear bumper of Menjivar's car with his car. Menjivar claimed he asked Martin to move back to see if his bumper was damaged, but Martin would not do so. An exchange of foul language ensued.

According to Menjivar, at one point the driver told him, "Get the f— away from my car," and "was reaching up under the seat, like if he had a gun or something." A passenger in the car said, "shoot that M-F." Although he never saw a weapon, he thought the men in the car had a gun. Menjivar got in his car and took off.

---

[2] Tango Blast is the name of a prison gang.

After he took off, he made a U-turn and was faced head-on and blinded by bright headlights from another car. He claimed he did not know that this was the same car full of men he had just argued with until he pulled up next to the driver's window. But he did not keep driving because "[i]t looked . . . like they wanted to say something," so he stopped his car next to theirs.

When he stopped his car next to the Charger, the men immediately jumped out and approached his car. Menjivar claimed the men were calling him names and someone tugged on the back of his shirt. He believed someone was trying to get in his car because someone tried to open his car door. All four men were "swinging at [him]" with arms coming through the windows punching him, and he was hit four times.

As Menjivar started to drive away, he heard someone say, "We'll get him down the block. Get in the car. We'll get him down the block." He also claimed the men used the word "shooting" and "made a gesture as if they had a gun."

Menjivar testified that he thought the men were going to come get him. As he was driving away down the aisle of the parking lot, another car was backing out in front of him and others were positioned to his left in a way that made him feel "trapped in," so he did not believe he could leave. He pulled his car only about a car-and-a-half length from the Charger before stopping only about seven seconds later.

Because he felt trapped, he said, Menjivar thought his only option was to get out of the car and "fight back," or as he said later, "fight it out" According to Menjivar, as he got out of his car, Fernando reached under his seat "like he was going for something." He believed his life was in danger and the men intended to harm him, so he acted to protect himself. He did not intend to kill Fernando.

–6–

On cross-examination, Menjivar admitted that he did not tell Detective Ibarra that anyone tapped the back of his car or threatened to shoot him. He just told the detective "some bullshit." Menjivar also agreed that he waited until the men were back in the car before he started running toward "the front passenger." All of the men but the passenger had their backs to him, but the passenger was "turned around looking at [him]."

## II.  Analysis

### A.  Was the Provocation Instruction Improperly Submitted?

Menjivar complains that the evidence does not support the trial court's inclusion of a charge on provocation.[3] We conclude there was sufficient evidence to include this instruction and overrule this issue.

A trial court must submit a charge setting forth the "law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007); *Reeves v. State*, 420 S.W.3d 812 (Tex. Crim. App. 2013). Here, the charge instructs the jury on intentional murder, self-defense, and provocation.

When reviewing jury instruction errors, we first determine whether there was error in the charge. *Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015); *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009). If error is present, the degree of harm necessary for reversal depends on whether the appellant preserved the error by objecting to the instruction provided at trial. *Olivas v. State*, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006). If the defendant properly objected to the erroneous jury charge instruction, reversal is required if we find even "some harm" to the defendant's rights. *Id.* at 144 n. 21. If the error was not objected to, it must

---

[3] The State argues that Menjivar was not entitled to a self-defense instruction, and therefore the trial court did not err by including a provocation instruction in the charge. We assume without deciding that the self-defense instruction was proper, and consider only the provocation instruction given with the charge on self-defense.

be "fundamental" and requires reversal only if it was so egregious and created such harm that the defendant "has not had a fair and impartial trial." *Barrios*, 283 S.W.3d at 350.

Menjivar admitted that he stabbed Fernando, but claimed he acted in self-defense. A person commits murder when he intentionally or knowingly causes the death of an individual. *See* TEX. PENAL CODE ANN. § 19.02(b)(1) (West 2011). Under certain circumstances, however, self-defense justifies the use of deadly force. *Morales v. State*, 357 S.W.3d 1, 7 (Tex. Crim. App. 2011).

Nonetheless, self-defense is not justified if the actor provokes the attack. *See* TEX. PENAL CODE ANN. § 9.31(b)(4) (West 2011); *Smith v. State*, 965 S.W.2d 509, 512 (Tex. 1998). An instruction on provocation, in response to a defendant's claim of self-defense, is appropriate when there is sufficient evidence (1) that the defendant did some act or used some words which provoked the attack on him, (2) that such act or words were reasonably calculated to provoke the attack, and (3) that the act was done or the words were used for the purpose and with the intent that the defendant would have a pretext for inflicting harm on the other. *Id.* at 513. Each of the three elements may be proved circumstantially. *Id*. at 515, 517–18. A provocation instruction should be submitted to the jury only "when there is evidence from which a rational jury could find every element of provocation beyond a reasonable doubt." *Id*. at 514. In making this determination, we view the evidence in the light most favorable to giving the instruction. *See id*.; *Mendoza v. State*, 349 S.W.3d 273, 279 (Tex. App.—Dallas 2011, pet. ref'd).

Despite Menjivar's assertion that the only evidence of him provoking Fernando is the evidence that he looked at Fernando the wrong way, there is ample evidence to support the submission of a provocation instruction. Specifically, as several witnesses testified and the surveillance video confirms, all parties drove away after the initial altercation ended. Then, Menjivar ran back to the Charger to, in his own words, "fight it out." Although he did not see a

–8–

gun, he got out of his car, armed with a knife, to fight the men in the Charger, including Fernando. According to Menjivar himself, it was at that point that he saw Fernando reach under the seat to grab something and then Menjivar attacked Fernando, fatally stabbing him with a knife.

On this evidence, a rational jury could conclude that (1) Menjivar's running toward the car with Fernando—after the prior altercation was over—was a provocative act, (2) his action was calculated to Fernando's reaction, and (3) Menjivar's actions were a pretext for inflicting harm on Fernando. *See Smith*, 965 S.W.2d at 513.

Therefore, viewed in the light most favorable to giving the instruction, we conclude that there is sufficient evidence on each element of provocation, and the trial court did not err in submitting the instruction. Accordingly, we need not conduct a harm analysis. *See Acosta v. State*, No. 05-11-01165-CR, 2013 WL 12777867, at *3 (Tex. App.—Dallas Feb. 27, 2013, no pet.) (mem. op.). Menjivar's issue is resolved against him.

## B.     Should the Judgment be Modified?

The State asks us to modify the judgment to reflect that Menjivar pled not true to the enhancement allegations and that the jury found the enhancement true. An appellate court can modify incorrect judgments when the evidence necessary to correct a judgment appears in the record. *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, writ ref'd).

The record reflects that the State alleged in the indictment that Menjivar had a prior conviction for the felony offense of aggravated assault, and the State also alleged, in a notice of intent to enhance punishment, that Menjivar had a prior conviction for felon in possession of a firearm. Menjivar pled not true to these allegations, but the jury found them to be true.

The judgment, however, states "N/A" in the spaces provided for Menjivar's pleas to the enhancement paragraphs and as to the jury's findings.

–9–

Because we have the necessary information to correct the judgment, we modify the judgment to reflect Menjivar's pleas of not true and the jury's findings of true. As modified, we affirm the trial court's judgment.

Do Not Publish
TEX. R. APP. P. 47
141028F.U05

/Bill Whitehill/
BILL WHITEHILL
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

ADOLPH JUNIOR MENJIVAR, Appellant

No. 05-14-01028-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 291st Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F-1357185-U.
Opinion delivered by Justice Whitehill.
Justices Lang and Evans participating.

Based on the Court's opinion of this date, we modify the judgment to reflect that Menjivr plead not true to the enhancement allegations but the jury found them true. As modified, the judgment of the trial court is **AFFIRMED**.

Judgment entered November 4, 2015.